IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JORDANN WILLS AND MYRON WILLS<br><br>Plaintiffs,<br><br>vs.<br><br>REGENCE BLUE CROSS BLUESHIELD OF UTAH,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:07-CV-799 TS |

This matter is before the Court on cross Motions for Summary Judgment. Plaintiffs bring this action under the Employee Retirement Income Security Act ("ERISA").[1] Plaintiffs challenge Defendant's decision to deny coverage for inpatient care that Jordann Wills received from September 14, 2005, to October 22, 2005, as not being medically necessary. Also before the Court is Plaintiffs' Motion to Strike Exhibits to Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. For the reasons discussed below, the Court will deny

---

[1] 29 U.S.C. §§ 1001 *et seq*.

1

as moot Plaintiffs' Motion to Strike, deny Plaintiffs' Motion for Summary Judgment, and grant Defendant's Motion for Summary Judgment.

## I. BACKGROUND

During the time period relevant to this action, Jordann Wills was insured under a group policy (the "Plan") issued to the employer (the "Group") of Myron Wills, Jordann's father. The Plan is a fully insured group health insurance policy provided and administered by Regence BlueCross BlueShield of Utah ("Regence" or "Defendant") and is subject to ERISA.

### A. THE PLAN

The Terms of the Plan are set forth in a Benefit Booklet.[2] The Plan granted the plan administrator—the Group—discretion to determine eligibility for participation in the Plan, and the Group delegated to Regence discretion to interpret the terms and conditions of the Plan.

The Plan includes a Mental Health Rider, which is attached to the Benefit Booklet as an addition to the main Contract. The Mental Health Rider provides that mental health benefits will be provided to participants pursuant to the terms found in the Mental Health Rider and the Contract to which the Rider is attached. The Mental Health Rider also states that the specific limitations and exclusions in the Rider are in addition to the limitations and exclusions in the "General Limitations and Exclusions" section of the Contract.

The "General Limitations and Exclusions" section of the Contract states that "No benefits will be provided for any of the following conditions, treatments, services, supplies, or accommodations, or for any direct complications or consequences thereof: . . . Services and

---

[2]Stipulated Pre-Litigation Appeal Record ("SAR") at 945-1031.

supplies that are not Medically Necessary for the treatment of an Illness or Injury except for preventive care benefits if specifically provided under the Plan."[3]

The Contract defines "Medically Necessary" as

[H]ealth care services or products that a prudent health care professional would provide to a patient for the purpose of preventing, diagnosing or treating an illness, injury, disease or its symptoms in a manner that is:
- in accordance with generally accepted standards of medical practice in the United States;
- clinically appropriate in terms of type, frequency, extent, site, and duration;
- not primarily for the convenience of the patient, physician, or other health care Provider; and
- covered under the contract;

When a medical question-of-fact exists medically necessity shall include the most appropriate available supply or level of service for the individual in question, considering potential benefits and harms to the individual, and that is known to be effective. For interventions not yet in widespread use, the effectiveness shall be based on Scientific Evidence. For established interventions, the effectiveness shall be based on first Scientific Evidence; then professional standards; and then expert opinion.[4]

B.    JORDANN'S TREATMENT AND DEFENDANT'S DENIAL OF BENEFITS

Jordann was admitted to the Center for Change ("CFC") on August 24, 2005, for inpatient treatment.[5] At the time of her admission, Jordann was diagnosed with Bulimia Nervosa; Major Depressive Disorder, Recurrent; Obsessive Compulsive Disorder; and Attention Deficit Hyperactivity Disorder, Combined Type.[6] Jordann remained at CFC in an inpatient

---

[3] *Id.* at 981, 987.

[4] *Id.* at 1028.

[5] *Id.* at 271.

[6] *Id.* at 273.

3

program from August 24, 2005, to October 22, 2005. Jordann remained at CFC in a residential treatment program until December 2005.

Regence covered Jordann's inpatient treatment from August 24, 2005, until September 13, 2005. Regence denied a request for inpatient care beyond September 14, 2005. As stated above, this action concerns Defendant's decision to deny coverage under the policy from September 14, 2005, to October 22, 2005.

Regence sent CFC a letter dated September 16, 2005, in which Regence stated that it would no longer authorize Jordann's inpatient treatment at CFC at an impatient level because criteria establishing medical necessity for such care was no longer met.[7]

CFC submitted an appeal of the denial on Jordann's behalf on September 21, 2005.[8] In connection with the appeal, CFC provided Regence with medical records and treatment notes.[9]

Regence denied the appeal on December 13, 2005.[10] Regence determined that the available documentation did not support the medical necessity for continued inpatient status.[11]

---

[7]SAR at 204.

[8]*Id*. at 106

[9]*Id*. at 69-103, 106-25.

[10]*Id*. at 189.

[11]*Id*.

Plaintiffs submitted a letter requesting a second level appeal on May 31, 2006.[12] After the second level appeal, Regence upheld the original determination to deny coverage.[13] In a letter dated August 15, 2006, Regence explained:

> Our decision is based on the fact your medical benefits do not cover residential treatment and in reviewing the medical records it was determined that Jordann did not meet the criteria for continued inpatient hospitalization after September 13, 2005 and could have been treated at a lower level of care from September 14, 2005 through October 22, 2005. The medical records reviewed showed documentation that there was no evidence of critical weight loss, there was no evidence of ECG's (electrocardiography) abnormality, no record of uncontrolled purging, and there was no evidence of serious symptoms of suicidality.[14]

On September 22, 2006, Regence informed Plaintiffs that their appeal was to be reviewed by an independent medical review organization ("IRO").[15] The IRO was given all of the information that Regence received concerning the matter, including previous appeal documentation submitted by Plaintiffs and the CFC.

After review, the IRO upheld Regence's denial decision, concluding that Jordann did not require continued hospitalization and was appropriate for residential care.[16] Regence informed Plaintiffs of the decision of the IRO by letter dated October 27, 2006.[17]

---

[12]*Id*. at 152-54.

[13]*Id*. at 164-65, 418-19.

[14]*Id*. at 420.

[15]*Id*. at 430.

[16]*Id*. at 436, 440-43.

[17]*Id*. at 438-39.

## II. DISCUSSION

### A. MOTION TO STRIKE

Before turning to the merits of Plaintiffs' ERISA claim, the Court must first consider Plaintiffs' Motion to Strike. Plaintiffs seek to strike certain exhibits filed by Defendant in opposition to Plaintiffs' Motion for Summary Judgment. Specifically, Defendant has submitted the affidavit and curriculum vitae of Dr. Diane Stein, the doctor who initially reviewed Jordann's claim. Defendant submitted these documents to rebut Plaintiffs' argument that Regence failed to utilized individuals with medial qualifications that were appropriate for the particular speciality at issue in this case.

The Court finds that Plaintiffs' Motion to Strike is moot as the Court does not need to consider the affidavit and curriculum vitae of Dr. Diane Stein to determine this matter. Therefore, the Motion will be denied.

### B. STANDARD OF REVIEW

The parties disagree as to the standard of review to be applied here. Defendant argues that the Court should employ an abuse of discretion standard, while Plaintiff argues for a *de novo* review.

A denial of benefits under an ERISA plan "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[18] If, however, "the plan given an administrator discretionary authority to determine eligibility for benefits or to construe its terms,

---

[18] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

we employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious."[19] As set forth above, the Plan granted Regence discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Therefore, ordinarily an arbitrary and capricious standard would apply.

> In applying the arbitrary and capricious standard, the decision will be upheld so long as it is predicated on a reasoned basis. In fact, there is no requirement that the basis relied upon be the only logical one or even the superlative one. Accordingly, [the Court's] review inquires whether the administrator's decision resides somewhere on a continuum of reasonableness—even if on the low end.
> A lack of substantial evidence often indicates an arbitrary and capricious decision. Substantial evidence is of the sort that a reasonable mind could accept as sufficient to support a conclusion. Substantial evidence means more than a scintilla, of course, yet less than a preponderance. The substantiality of the evidence is evaluated against the backdrop of the administrative record as a whole.[20]

Plaintiffs argue, however, that a *de novo* standard should be employed here because of certain procedural irregularities that allegedly occurred. Plaintiffs further argue that, if the Court applies an abuse of discretion standard, the Court should take into account Regence's inherent conflict of interest. The Court will discuss each of these in turn.

### 1. *Procedural Irregularities*

The Tenth Circuit has held that "when a serious procedural irregularity exists, and the plan administrator has denied coverage, an additional reduction in deference is appropriate."[21]

---

[19]*Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009) (quotation marks and citation omitted).

[20]*Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) (internal quotation marks and citations omitted).

[21]*Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1006 (10th Cir. 2004).

However, the Tenth Circuit has noted that a serious procedural irregularity is not "present in every instance where the plan administrator's conclusion is contrary to the result desired by the claimant."[22] The irregularity must raise "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim."[23]

Plaintiffs point to two alleged procedural irregularities which, they argue, warrant *de novo* review. First, Plaintiffs argue that Regence failed to provide them with a copy of the InterQual criteria Regence utilized in evaluating Jordann's claim. Second, Plaintiffs argue that Regence failed to utilize individuals with medical qualifications that were appropriate for the particular speciality at issue in this case.

Plaintiff first argues for a *de novo* review based on Regence's alleged failure to provide Plaintiffs with a copy of the Interqual criteria used to evaluate Jordann's claim.

The InterQual criteria is cited by Regence as one of a number of items it considered in denying Jordann's claim.[24] Suzanne Wills, Jordann's mother, states that she repeatedly requested a copy of the InterQual criteria, but never received one.[25] Without these criteria, Ms. Wills

---

[22]*Adamson*, 455 F.3d at 1214 n.2; *see also* Grosvenor v. Qwest Commc'ns Int'l, 191 Fed. Appx. 658, 662 (10th Cir. 2006) (unpublished decision) ("A serious procedural irregularity is not present every time a plan administrator comes to a decision adverse to the claimant on conflicting evidence.").

[23]*McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1031 (8th Cir. 2000).

[24]*See* SAR at 155, 164, 420, 438, 441.

[25]Docket No. 33, ¶¶ 7-8.

asserts that she was unable to dispute or disprove any of Regence's bases for denial of coverage.[26]

As an initial matter, it is unclear whether Plaintiffs ever received a copy of the InterQual criteria. Ms. Wills alleges that she requested a copy of the criteria on a number of occasions. The SAR supports this, with references of Ms. Wills requesting the criteria and confusion on the part of Regence as to whether the criteria could be released.[27] That being said, in a letter to Regence, Ms. Wills admitted to asking for the inpatient criteria and not receiving "an answer until January 20, 2006,"[28] seemingly admitting that she did receive the criteria by that date. Further, the InterQual criteria is part of the record in this case.[29] Defense counsel represents that Plaintiffs produced these documents in their initial disclosures.[30] Plaintiff's counsel, however, represents that these were materials produced in discovery in related litigation.[31] Based on the record before it, the Court cannot conclusively state that Plaintiffs did not receive the InterQual criteria.

---

[26]*Id.* at ¶ 9.

[27]*See* SAR at 55, 68, 131-34, 137.

[28]*Id.* at 153.

[29]*Id.* at 200-03. Plaintiffs argue that there is nothing to suggest that the documents found at pages 200-203 of the SAR are the InterQual criteria. Docket No. 45 at 13. However, an earlier document identifies these pages as the InterQual criteria. SAR at 164.

[30]Docket No. 41 at 36, 40.

[31]Docket No. 45 at 13.

Assuming that Regence failed to provide the InterQual criteria, the Court finds that this is not the type of serious procedural irregularity that warrants *de novo* review. 29 C.F.R. § 2560.503-1(h)(2)(iii) states that "a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."[32] A document is relevant to a claimant's claim if the document was relied upon in making the benefit determination.[33]

In this matter, the InterQual criteria was clearly relied upon in making the benefit determination. Therefore, the failure to provide that document, upon request, would be a violation of this regulation. However, the Court finds that such a violation, where there is no showing of bad faith or how access to that document would have altered the benefit determination, does not warrant a higher level of review. The InterQual criteria was only one of a number of items reviewed by Regence in making its determination. It is undisputed that Plaintiffs had the ability to access other relevant information.[34] Further, the denials by Regence explained the reason for the denials and stated the reason for the determination. Specifically, Regence stated:

> Our decision is based on the fact your medical benefits do not cover residential treatment and in reviewing the medical records it was determined that Jordann did not meet the criteria for continued inpatient hospitalization after September 13, 2005 and could have been treated at a lower level of care from September 14, 2005 through October 22, 2005. The medical records reviewed showed

---

[32]29 C.F.R. § 2560.503-1(h)(2)(iii).

[33]*Id*. § 2560.503-1(m)(8)(i).

[34]*See* SAR at 155 (stating that documents, records, and other information relevant to an appeal was available upon request); *id*. at 204 (same); *id*. at 421 (same); *id*. at 439 (same).

10

documentation that there was no evidence of critical weight loss, there was no evidence of ECG's (electrocardiography) abnormality, no record of uncontrolled purging, and there was no evidence of serious symptoms of suicidality.[35]

Regence also explained the reasoning behind the IRO's determination in a similar manner.[36] Plaintiffs had the opportunity to use this information in challenging the benefit determination. Plaintiffs did, in fact, submit a great deal of materials that Regence and the IRO considered in determining Plaintiffs' claim.

For these reasons, the Court finds that Plaintiffs have not demonstrated the type of serious procedurally irregularity that would warrant *de novo* review. This conclusion is supported by the Supreme Court's recent decision in *Conkright v. Frommert*,[37] where the Court held that "a single honest mistake in plan interpretation" does not justify stripping the plan administrator of deference.[38] While the alleged violation of the regulation does not warrant *de novo* review, the Court will consider it as a factor in determining whether Regence abused its discretion in denying Jordann's claim.[39]

---

[35]*Id*. at 420.

[36]*Id*. at 438.

[37]130 S.Ct. 1640 (2010).

[38]*Id*. at 1644.

[39]*See Smith v. New Mexico Coal 401(k) Personal Savings Plan*, 334 Fed.Appx.150, 157 (unpublished decision) (stating that the reviewing court "will always apply an arbitrary and capricious standard, [we] decrease the level of deference given in proportion to the seriousness of the conflict [or irregularity]") (quoting *Weber v. GE Group Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008)) (alterations in original).

The second alleged procedural irregularity raised by Plaintiffs is that Regence failed to utilize individuals with medical qualifications that were appropriate for the particular speciality at issue in this case. 29 C.F.R. 2560.503-1(h)(3)(iii) requires

> that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is . . . not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment.[40]

Plaintiffs argue that Regence failed this requirement here. Plaintiffs state that "[t]here is no indication in the Record that any of [the individuals involved in the benefit determination] are psychiatrists who have any significant experience treating individuals with eating disorders."[41] As a result, Plaintiffs argue, Regence has failed to comply with the above-quoted regulation.

The Court must reject Plaintiffs' argument as it is based upon mere speculation and is belied by the record. The SAR reflects that both the initial review and the IRO were conducted by psychiatrists.[42] Dr. Stein, the psychiatrist who conducted the initial review, conducted a "peer-to-peer" discussion with Jordann's own doctor, suggesting she had the necessary qualifications to do so.[43] Thus, the evidence before the Court is that Regence did "consult with a health care professional who has appropriate training and experience in the field of medicine

---

[40] 29 C.F.R. § 2560.503-1(h)(3)(iii).

[41] Docket No. 32 at 23.

[42] SAR at 189 ("The case was reviewed by a psychiatrist (Dr. Stein) at the time of the determination."); *id*. at 441 (stating that the IRO was reviewed by a board certified psychiatrist).

[43] *Id*. at 192.

12

involved in the medical judgment"[44] in making its benefits determination. Plaintiffs' suggestion to the contrary is unsupported.

   2.   *Conflict of Interest*

Plaintiffs argue that, even if a *de novo* standard is not applied, Regence's conflict of interest requires a significant reduction in the deference given. Plaintiff argues that Defendant operates under the same conflict at issue in *Metropolitan Life Insurance Company v. Glenn*.[45] In *Glenn*, the Court stated "that a conflict should be weighted as a factor in determining whether there is an abuse of discretion."[46] The Court rejected the argument that a conflict changes the standard of review from deferential to *de novo*.[47] *Glenn* provides for a combination of factors method of review that should take "account of several different, often case-specific, factors, reaching a result by weighing all together."[48] A conflict "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision . . . [and] should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy . . . ."[49]

---

[44] 29 C.F.R. § 2560.503-1(h)(3)(iii).

[45] 554 U.S. 105 (2008).

[46] *Id.* at 115 (quotation marks and citations omitted).

[47] *Id.*

[48] *Id.* at 117.

[49] *Id.*

13

In this matter, Regence took active steps to reduce any potential bias. As set forth above, after reviewing Plaintiffs' claim twice, Regence submitted the claim to an independent medical review organization ("IRO"). The IRO was given all of the information that Regence received concerning the matter, including previous appeal documentation submitted by Plaintiffs and the CFC. After review, the IRO upheld Regence's denial decision. Based on this, the Court gives the conflict-of-interest factor limited weight.[50]

C. DENIAL OF BENEFITS

With the appropriate standard of review in mind, the Court turns to the issue of whether Regence's denial was an abuse of discretion. The records from the relevant period of time reveal that while Jordann had a consistent fear of gaining weight and had a negative body image, she largely maintained her weight and her body mass index ("BMI") was within the normal range.[51] Further, Jordann's vital signs were consistently normal.[52] The notes from her treating doctors reveal no evidence of suicidality or desire for self harm.[53] Indeed, the evidence suggests that even her doctor believed that she was ready for residential care as of September 14, 2005.[54]

---

[50]*Holcomb*, 578 F.3d at 1193 (finding that administrator "took steps to reduce its inherent bias by hiring two independent physicians").

[51]SAR at 74-77, 89, 91, 97, 101, 116-118, 123, 243, 290-95, 363, 367, 371, 375, 379, 383.

[52]*Id*. at 116-17, 222, 234, 237, 240, 391-93, 396-99, 400-03.

[53]*Id*. at 79-87, 119-22, 236, 246-49.

[54]*Id*. at 192.

Finally, there are references in the record to Jordann going on various outings and passes,[55] which are inconsistent with the continued need for inpatient care. Based on a careful consideration of the entire record in this matter, the Court finds that Defendant did not abuse its discretion when it denied continued coverage for inpatient care after September 13, 2005. There is substantial evidence in the record to support the decision that inpatient care was no longer medically necessary after that date.

III. CONCLUSION

It is therefore

ORDERED that Plaintiffs' Motion to Strike (Docket No. 46) is DENIED AS MOOT. It is further

ORDERED that Plaintiffs' Motion for Summary Judgment (Docket No. 31) is DENIED. It is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 28) is GRANTED.

The hearing set for March 17, 2011, is STRICKEN. The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiffs and close this case forthwith.

DATED March 14, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[55]*Id.* at 294, 297, 329, 333, 335, 337, 338, 341, 349.